IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
CASE NO:

ANGELA COLEGROVE,
        Plaintiff,

v.

GLADES COUNTY, FLORIDA,
        Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Angela Colegrove ("Plaintiff" or "Ms. Colegrove"), sues Defendant,

Glades County, Florida ("Defendant" or "the County"), and alleges as follows:

INTRODUCTION

1. This is an employment discrimination, harassment, retaliation, disability

   discrimination, and wrongful termination action arising from Plaintiff's

   employment with Glades County.

2. Plaintiff served Glades County for approximately twenty-nine years and,

   during the final years of her employment, served as Acting Public Safety

   Director and/or Public Safety Director, overseeing emergency management,

   emergency medical services, and fire operations.

3. Plaintiff alleges that Defendant discriminated against her because of her sex, gender, and disability; subjected her to a hostile work environment; retaliated against her for opposing unlawful and improper conduct and for engaging in protected activity; interfered with and retaliated against her for medical leave; and terminated her employment on or about August 25, 2025.

4. Plaintiff seeks declaratory relief, injunctive relief, back pay, front pay, compensatory damages, liquidated damages where available, attorneys' fees, costs, interest, and all other relief permitted by law.

## PARTIES

5. Plaintiff Angela Colegrove is an individual who resides in Venus, Florida.

6. Defendant Glades County, Florida is a political subdivision and public employer located in Glades County, Florida.

7. At all relevant times, Defendant employed Plaintiff within the meaning of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, and the Florida Civil Rights Act.

8. At all relevant times, Defendant employed more than fifteen employees and, on information and belief, employed more than fifty employees within seventy-five miles of Plaintiff's worksite.

9. At all relevant times, Defendant acted through its managers, supervisors, human resources personnel, agents, employees, and decisionmakers, including but not limited to County Managers, Human Resources Director Bailey Taylor, and other County officials.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 because this action arises under federal law, including Title VII, the ADA, and the FMLA.

11. This Court has supplemental jurisdiction over Plaintiff's Florida Civil Rights Act claims under 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

12. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Plaintiff was employed by Defendant in this District.

13. The Fort Myers Division is the proper division because the events occurred in Glades County, Florida.

## ADMINISTRATIVE EXHAUSTION

14. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations on or about December 29, 2025.

15. In her Charge, Plaintiff alleged discrimination based on sex, gender, disability, and retaliation, and identified the most recent discrimination as occurring in October 2021 through ongoing conduct.

16. Plaintiff has satisfied all conditions precedent to bringing this action, including receipt of a Notice of Right to Sue from the EEOC dated April 16, 2026, and this action is filed within ninety days of Plaintiff's receipt of that notice.

17. To the extent any condition precedent is required, all conditions precedent to this action have occurred, have been satisfied, have been waived, or have otherwise been excused.

## GENERAL FACTUAL ALLEGATIONS

18. Plaintiff began working for Glades County approximately twenty-nine years before her termination.

19. Plaintiff had no disciplinary history in her personnel file during her long tenure with the County.

20. On or about November 18, 2019, Defendant appointed Plaintiff to assume the duties of Acting Public Safety Director for Glades County.

21. Plaintiff's Acting Public Safety Director appointment substantially expanded her job duties and responsibilities.

22. Before that appointment, Plaintiff served in emergency management and oversaw approximately one and one-half employees in a primarily forty-hour-per-week position.

23. As Acting Public Safety Director and/or Public Safety Director, Plaintiff oversaw Emergency Management, EMS, and Fire operations, including approximately twenty to twenty-two employees in a twenty-four-hour, seven-day-per-week public safety operation.

24. Plaintiff was responsible for departments with different rules, statutes, regulations, job descriptions, operational demands, and public safety obligations.

25. When Defendant appointed Plaintiff Acting Public Safety Director, her pay increased from approximately $22.86 per hour to approximately $30.00 per hour.

26. Despite Plaintiff's substantially increased responsibilities, male directors within the County were paid significantly more than Plaintiff.

27. On information and belief, employees working under male directors also made more money than Plaintiff.

28. On information and belief, Defendant hired a female Community Development Director with fewer employees under her supervision and paid that director more than Plaintiff.

29. Plaintiff was told that certain members of the Board of County Commissioners did not want Plaintiff to receive a larger increase.

30. Plaintiff was also denied an executive retirement percentage increase to which she was entitled until County Manager June Fisher later corrected the issue.

31. Defendant's failure to provide Plaintiff equal pay, equal retirement treatment, and equal employment terms caused Plaintiff financial harm, including reduced retirement-related benefits.

32. During Plaintiff's final years of employment, she experienced repeated harassment, bullying, gender-based hostility, sexually derogatory comments, disability-related hostility, and retaliation.

33. Plaintiff complained about improper conduct, defended employees from unfair treatment, challenged Human Resources Director Bailey Taylor when Taylor attempted to discipline or terminate employees without proper investigation, and reported Taylor's misconduct to County leadership.

34. After Plaintiff engaged in these protected and opposition activities, the harassment, scrutiny, and hostility toward Plaintiff intensified.

## DISABILITY, MEDICAL LEAVE, AND HARASSMENT

35. In or around June 2022, Plaintiff learned that she suffered from degenerative medical conditions affecting her neck, spine, and hip, as well as bursitis in multiple locations.

36. Plaintiff's conditions caused severe pain, required ongoing medical treatment, physical therapy, injections, surgical care and/or recovery, rest, and periodic absences from work.

37. Plaintiff's medical conditions substantially limited one or more major life activities, including but not limited to walking, standing, sitting, lifting, sleeping, concentrating, working, and other daily activities.

38. Defendant knew of Plaintiff's medical conditions and need for treatment, leave, and recovery time.

39. Before Bailey Taylor became Human Resources Director and Marcos Montes De Oca became County Manager, Plaintiff had not experienced similar problems with Human Resources or County management regarding major surgeries or medical leave.

40. After Taylor and Montes De Oca assumed their roles, Plaintiff was subjected to increased scrutiny, hostility, threats, and interference relating to her medical conditions and medically related absences.

41. Montes De Oca required Plaintiff to use FMLA leave even though Plaintiff had available sick leave.

42. Plaintiff believed Defendant was attempting to force her out because of her medical conditions and need for treatment and leave.

43. The stress from Defendant's harassment and hostile work environment worsened Plaintiff's medical condition and symptoms.

44. Plaintiff experienced severe stress-related physical effects, including weight loss, hair loss, worsened pain, and abnormal bloodwork.

45. Plaintiff sometimes had to rest or lie down at work to manage severe bursitis and pain so that she could complete the workday.

46. Plaintiff feared she would be fired because of her health conditions, medical treatment, and leave.

47. On or about April 16, 2023, Plaintiff emailed Finance Director Tasha Morgan explaining that Plaintiff had significant medical issues and that a project would take additional time because of Plaintiff's recovery needs.

48. On or about April 17, 2023, Morgan forwarded Plaintiff's medical-related email to Taylor.

49. Plaintiff's medical information was thereafter used against her.

50. Defendant failed to engage in a good-faith interactive process to determine reasonable accommodations for Plaintiff's known disabilities.

51. Defendant failed to reasonably accommodate Plaintiff's disabilities, including by failing to allow appropriate medical leave, schedule flexibility, rest, remote work or work-from-home flexibility, and other reasonable accommodations that would have allowed Plaintiff to perform the essential functions of her position.

## PROTECTED ACTIVITY AND RETALIATION

52. Plaintiff repeatedly opposed conduct she reasonably believed to be unlawful, discriminatory, retaliatory, unsafe, improper, or contrary to County policy.

53. Plaintiff opposed and rebutted an unsigned complaint against her that contained numerous allegations, which Plaintiff believed were false and were part of an effort to undermine and remove her.

54. Plaintiff provided a detailed rebuttal with supporting documentation to Board members, the County Attorney, and the County's labor attorney.

55. After Plaintiff submitted her rebuttal and supporting documentation, the harassment against her intensified.

56. Male employees made or repeated sexually derogatory statements about Plaintiff, including statements suggesting that Plaintiff obtained or kept her job through sexual conduct with supervisors.

57. Plaintiff reported or opposed this conduct.

58. On information and belief, one employee was terminated for this conduct, while another employee received no discipline.

59. On or about May 23, 2024, Taylor attempted to immediately terminate FF/EMT Jordan Hernandez based on a single complaint without conducting a proper investigation.

60. Plaintiff opposed Taylor's effort to terminate Hernandez without investigation and presented witness statements and information showing that the complaint was unfounded or unsupported.

61. Plaintiff questioned Taylor's failure to interview relevant witnesses and conduct a proper investigation.

62. Taylor became visibly angry, hostile, and confrontational toward Plaintiff during the meeting.

63. Plaintiff's intervention prevented the immediate termination of Hernandez.

64. After Plaintiff opposed Taylor's conduct, Taylor retaliated against Plaintiff.

65. In or around December 2024, during an issue involving employee Scott Durban, Taylor demanded that Plaintiff report immediately for a drug test while Plaintiff was recovering from back-to-back gastrointestinal procedures under anesthesia.

66. Plaintiff told Taylor and/or County representatives that she could not safely drive because she was recovering from anesthesia.

67. Taylor threatened that Plaintiff would be fired if Plaintiff did not report immediately.

68. County Manager June Fisher described Taylor's demand as ridiculous.

69. Plaintiff reported for and passed the drug test the following Monday.

70. During the Durban matter, Taylor and Clerk of Court Tami Pearce attempted to inspect the department's drug storage, handling, and access procedures.

71. Plaintiff believed Taylor and Pearce lacked authority to inspect or control the department's drug storage and that the attempted inspection could create regulatory, confidentiality, medical privacy, and operational issues.

72. Plaintiff called Board Chair Tim Stanley to report Taylor's conduct and overreach.

73. After learning Plaintiff called Stanley, Taylor entered Plaintiff's office, forced the door shut, moved toward Plaintiff's desk, raised her voice, leaned toward Plaintiff, and demanded to know whether Plaintiff had called Stanley.

74. Plaintiff opposed Taylor's conduct and informed Taylor that she had no right to treat Plaintiff that way or to overstep the bounds of her authority.

75. Taylor also improperly disclosed confidential medical and/or personnel information concerning Durban to persons who had no need to know the information.

76. Plaintiff believed and stated that these disclosures were improper and violated confidentiality obligations.

77. In or around May 2025, Plaintiff told Chief Larry Factor that she believed Defendant was watching her and that she would be fired within a year.

78. Chief Factor told Plaintiff words to the effect of, "I think they are watching you," referring to County Manager Paul Carlisle and Taylor.

79. Plaintiff began removing personal items from her office because she believed termination was imminent.

80. Plaintiff entered the Florida Retirement System Deferred Retirement Option Program with an August 1, 2025 start date.

TERMINATION

81. In early August 2025, Carlisle requested a meeting with Plaintiff regarding "Public Safety scheduling."

82. The meeting was rescheduled to August 25, 2025.

83. Plaintiff asked whether Chief Factor should attend the meeting and what materials should be brought.

84. Plaintiff was told that only Plaintiff should attend.

85. On or about August 25, 2025, Plaintiff attended the meeting with Carlisle and Taylor.

86. Instead of discussing Public Safety scheduling, Carlisle questioned Plaintiff about recent absences, work-from-home issues, days in the prior week, and Fridays when Plaintiff had not been physically present.

87. Plaintiff was in severe pain from bursitis at the time of the meeting.

88. Plaintiff attempted to explain that she had medical conditions, had been on FMLA leave, and had documentation from Dr. Fuchs that Taylor maintained in Plaintiff's file.

89. Carlisle repeatedly interrupted Plaintiff and did not allow Plaintiff to explain her medical conditions, FMLA status, documentation, work performed, schedule, or timesheet status.

90. Taylor did not assist Plaintiff, did not retrieve Plaintiff's medical documentation, and did not correct Carlisle regarding Plaintiff's FMLA or medical documentation.

91. Taylor smiled as she slid the termination letter to Plaintiff.

92. Carlisle told Plaintiff that Defendant was terminating her employment.

93. Carlisle stated that Defendant was keeping Plaintiff's earned vacation time and would have IT determine whether Plaintiff had been working from home on questioned days.

94. Carlisle accused Plaintiff, in substance, of "stealing" if Plaintiff had not been working.

95. Plaintiff was not given a meaningful opportunity to respond, provide medical documentation, request accommodation, correct any misunderstanding, or submit a rebuttal.

96. Plaintiff was not offered a reasonable opportunity to provide a doctor's note confirming her pain, bursitis, degenerative conditions, or need for leave and accommodation.

97. Defendant arranged for a deputy to escort Plaintiff from the workplace, despite Plaintiff's twenty-nine years of service and lack of disciplinary history.

98. Defendant had no legitimate need to use a deputy escort and did so to embarrass, humiliate, and retaliate against Plaintiff.

99. Plaintiff was not provided appropriate information regarding COBRA or continuation of dental or vision benefits at the termination meeting.

100. Plaintiff's termination was caused by and/or substantially motivated by her sex, gender, disability, medical conditions, use of and need for medical leave, requests for accommodation, protected opposition activity, and complaints about unlawful and improper conduct.

101. Defendant's stated reasons for termination were pretextual.

102. Defendant treated similarly situated employees outside Plaintiff's protected classes more favorably.

## POST-TERMINATION CONDUCT

103. After Plaintiff's termination, Taylor and Defendant continued to retaliate against Plaintiff.

104. Plaintiff requested her personnel file and related records, but Taylor delayed providing them.

105. Taylor delayed, mishandled, and/or made errors in Plaintiff's DROP retirement paperwork.

106. Taylor attempted to charge Plaintiff approximately $1,944.80 for a public records request on or about October 23, 2025, without adequately explaining or documenting how the charge was calculated.

107. Taylor attempted to impose an unexplained three-percent charge relating to Plaintiff's vacation pay.

108. Plaintiff and Plaintiff's counsel requested information and documentation concerning the charges, but Taylor failed or refused to provide adequate responses.

109. Plaintiff suffered damages including lost wages, lost benefits, lost retirement-related benefits, emotional distress, humiliation, reputational harm, physical aggravation of medical symptoms, and other damages.

## COUNT I — SEX DISCRIMINATION UNDER TITLE VII

110. Plaintiff re-alleges ¶¶ 1 through 109 as if fully set forth herein.

111. Title VII prohibits employers from discriminating against employees with respect to compensation, terms, conditions, and privileges of employment because of sex.

112. Plaintiff is a woman and is a member of a protected class.

113. Plaintiff was qualified for her position and performed her job satisfactorily.

114. Plaintiff was subjected to adverse employment actions, including unequal pay, unequal retirement treatment, hostile treatment, heightened scrutiny, humiliation, and termination.

115. Defendant treated male directors and/or male employees more favorably with respect to pay, benefits, discipline, workplace respect, and continued employment.

116. Plaintiff's sex was a motivating factor in Defendant's adverse employment actions.

117. Defendant's conduct caused Plaintiff damages.

## COUNT II — SEX-BASED HOSTILE WORK ENVIRONMENT UNDER TITLE VII

118. Plaintiff re-alleges ¶¶ 1 through 109 as if fully set forth herein.

119. Plaintiff was subjected to unwelcome harassment based on sex.

120. The harassment included sexually derogatory statements, rumors and accusations that Plaintiff obtained or retained her position through sexual conduct, attacks on Plaintiff's professional reputation, and tolerance of male employees' misconduct.

121. The harassment was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

122. Defendant knew or should have known of the harassment and failed to take prompt, effective remedial action.

123. Defendant is liable for the hostile work environment created and tolerated by its supervisors, managers, agents, and employees.

124. Defendant's conduct caused Plaintiff damages.

## COUNT III — RETALIATION UNDER TITLE VII

125. Plaintiff re-alleges ¶¶ 1 through 109 as if fully set forth herein.

126. Plaintiff engaged in protected activity by opposing discrimination, harassment, sexually derogatory conduct, retaliatory conduct, and improper employment practices.

127. Plaintiff also engaged in protected activity by submitting a detailed rebuttal to false allegations and by reporting misconduct to County leadership and attorneys.

128. Defendant subjected Plaintiff to materially adverse actions, including increased hostility, heightened scrutiny, threats, humiliation, denial or delay of benefits and records, and termination.

129. There was a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

130. Defendant's stated reasons were pretextual.

131. Defendant's retaliation caused Plaintiff damages.

COUNT IV — DISABILITY DISCRIMINATION UNDER THE ADA

132. Plaintiff re-alleges ¶¶ 1 through 109 as if fully set forth herein.

133. The ADA prohibits covered employers from discriminating against a qualified individual on the basis of disability.

134. Plaintiff had disabilities within the meaning of the ADA, including degenerative neck, spine, and hip conditions and chronic bursitis that substantially limited one or more major life activities.

135. Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation.

136. Defendant knew of Plaintiff's disabilities and medical restrictions.

137. Defendant discriminated against Plaintiff because of her disabilities by subjecting her to heightened scrutiny, threats, harassment, denial of reasonable accommodation, adverse treatment for medically necessary absences, and termination.

138. Defendant's stated reasons for its actions were pretextual.

139. Defendant's disability discrimination caused Plaintiff damages.

COUNT V — FAILURE TO ACCOMMODATE UNDER THE ADA

140. Plaintiff re-alleges ¶¶ 1 through 109 as if fully set forth herein.

141. Plaintiff had disabilities within the meaning of the ADA.

142. Defendant knew of Plaintiff's disabilities and need for leave, recovery time, schedule flexibility, rest, and/or other accommodations.

143. Plaintiff could perform the essential functions of her position with reasonable accommodation.

144. Reasonable accommodations available to Defendant included, without limitation, medical leave, intermittent leave, schedule flexibility, permission to work remotely when appropriate, permission to rest during severe flare-ups, modification of reporting expectations during medically documented absences, and a good-faith interactive process.

145. Defendant failed to engage in a good-faith interactive process.

146. Defendant failed to provide reasonable accommodations and instead treated Plaintiff's medical needs as misconduct.

147. Defendant's failure to accommodate caused Plaintiff damages.

## COUNT VI — ADA RETALIATION

148. Plaintiff re-alleges ¶¶ 1 through 109 as if fully set forth herein.

149. Plaintiff engaged in protected activity under the ADA by disclosing her disabilities, providing medical documentation, requesting or using medical leave and accommodations, and opposing disability-related harassment and discrimination.

150. Defendant subjected Plaintiff to materially adverse actions, including threats, heightened scrutiny, denial of accommodation, humiliation, post-termination interference, and termination.

151. Defendant acted because of Plaintiff's protected ADA activity.

152. Defendant's stated reasons were pretextual.

153. Defendant's ADA retaliation caused Plaintiff damages.

### COUNT VII — FMLA INTERFERENCE

154. Plaintiff re-alleges ¶¶ 1 through 109 as if fully set forth herein.

155. Plaintiff was an eligible employee under the FMLA.

156. Defendant was a covered employer under the FMLA.

157. Plaintiff was entitled to FMLA leave for serious health conditions that made her unable to perform the functions of her position during medically necessary periods.

158. Plaintiff provided Defendant notice of her serious health conditions and need for leave.

159. Defendant interfered with, restrained, or denied Plaintiff's exercise or attempted exercise of FMLA rights by treating protected or medically supported absences as misconduct, refusing to consider available

documentation, refusing to allow Plaintiff to explain her FMLA status, and terminating her employment based on absences and leave-related issues.

160. Defendant's FMLA interference caused Plaintiff damages.

## COUNT VIII — FMLA RETALIATION

161. Plaintiff re-alleges ¶¶ 1 through 109 as if fully set forth herein.

162. Plaintiff engaged in protected activity by requesting, using, or attempting to use FMLA leave.

163. Defendant knew Plaintiff had requested, used, or attempted to use FMLA leave.

164. Defendant subjected Plaintiff to materially adverse actions, including increased scrutiny, threats, discipline, humiliation, and termination.

165. Plaintiff's FMLA-protected activity was a motivating factor and/or but-for cause of Defendant's adverse actions.

166. Defendant's stated reasons were pretextual.

167. Defendant's FMLA retaliation caused Plaintiff damages.

## COUNT IX — FLORIDA CIVIL RIGHTS ACT: SEX AND DISABILITY DISCRIMINATION

168. Plaintiff re-alleges ¶¶ 1 through 109 as if fully set forth herein.

169.The Florida Civil Rights Act prohibits discrimination in employment because of sex and handicap/disability.

170.Plaintiff was a member of protected classes based on sex and disability.

171.Plaintiff was qualified for her position and performed her job satisfactorily.

172.Defendant subjected Plaintiff to adverse employment actions because of her sex and disability, including unequal compensation, unequal employment terms, hostile treatment, denial of accommodation, adverse treatment for medical absences, and termination.

173.Defendant's conduct violated the Florida Civil Rights Act.

174.Defendant's conduct caused Plaintiff damages.

COUNT X — FLORIDA CIVIL RIGHTS ACT: RETALIATION

175.Plaintiff re-alleges ¶¶ 1 through 109 as if fully set forth herein.

176.Plaintiff engaged in protected activity by opposing discrimination, harassment, disability-related mistreatment, and retaliatory conduct.

177.Defendant subjected Plaintiff to materially adverse actions after and because of Plaintiff's protected activity.

178.Defendant's stated reasons were pretextual.

179. Defendant's retaliation violated the Florida Civil Rights Act and caused Plaintiff damages.

DAMAGES

180. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including, but not limited to:

a.  Lost wages;

b.  Lost employment benefits;

c.  Lost retirement benefits and retirement-related losses;

d.  Lost earning capacity;

e.  Emotional distress;

f.  Mental anguish;

g.  Humiliation and embarrassment;

h.  Reputational harm;

i.  Physical aggravation of medical conditions;

j.  Loss of enjoyment of life;

k.  Out-of-pocket losses;

l.  Attorneys' fees and costs; and

m. Prejudgment and post-judgment interest.

181. Defendant acted intentionally, willfully, maliciously, recklessly, and/or with callous disregard for Plaintiff's federally and state-protected rights.

182. Plaintiff is entitled to all damages and equitable relief permitted by law.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Angela Colegrove respectfully requests that this Court enter judgment in her favor and against Defendant Glades County, Florida, and award the following relief:

A. A declaration that Defendant violated Plaintiff's rights under Title VII, the ADA, the FMLA, and the Florida Civil Rights Act;

B. Back pay;

C. Front pay or reinstatement, as appropriate;

D. Lost benefits, including retirement-related losses;

E. Compensatory damages;

F. Liquidated damages under the FMLA where available;

G. Injunctive relief requiring Defendant to cease unlawful employment practices and take corrective action;

H. Prejudgment interest;

I. Post-judgment interest;

J.  Reasonable attorneys' fees and costs;

K.  Trial by jury on all issues so triable; and

L.  Such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

**DATED JULY 2, 2026**                                   **FOR PLAINTIFF:**

BY: *|s| G. Ware Cornell, Jr.*
G. Ware Cornell, Jr.  |  FBN: 203920
ware@warecornell.com  |  (954) 618-1041
**CORNELL & ASSOCIATES, P.A.**
2645 Executive Park Drive, Weston, Fla. 33331